**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 |
|  | ) |  |
| JEAN FOWLER, | ) | Case No. 06-10207 (MFW) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of the United States Trustee (the "UST") to Dismiss the chapter 7 case of Jean Fowler (the "Debtor") pursuant to section 707(b)(2) and (b)(3). The Debtor opposes the Motion. At the hearing on the Motion, the parties asked the Court to address the following discrete issue: whether the Debtor, for purposes of section 707(b)(2)(A)(ii)(I), may take the ownership deduction specified in the IRS Local Transportation Expense Standards for a car she owns which is not collateral for any debt. For the reasons stated below, the Court concludes that the Debtor may take the deduction.

I.  BACKGROUND

The Debtor filed her voluntary petition under chapter 7 on March 8, 2006. The Debtor filed her Schedules and Statement of

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Financial Affairs on that same date.  Amended Schedules B and C were filed March 16, 2006.  The Debtor's Schedules demonstrate that she has general unsecured debt of $48,776.72.  The Debtor admits her debt is primarily consumer debt.

On May 12, 2006, the UST filed a Motion to dismiss the case. The Debtor filed an Amended Form B 22A (Statement of Current Monthly Income and Means Test Calculation) on May 16, 2006, and responded to the UST's Motion on May 17, 2006.

A hearing was held on the Motion on June 16, 2006, at which time the parties advised that, although there were other disputes regarding the Debtor's claimed expenses, there would be no presumption of abuse under section 707(b)(2) if the Court determines the Debtor may take the deduction for ownership of her car.  Therefore, the parties presented oral argument and post-hearing briefs on that issue.  The matter is ripe for decision.

II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A) & (O).

III. DISCUSSION

The UST seeks dismissal of the Debtor's case under section 707(b) of the Bankruptcy Code.  Section 707(b)(1) provides that the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with

the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter." Id.

Section 707(b)(2), commonly known as the "means test," was added by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). It provides, in pertinent part:

> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of -
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i).

The Debtor's Amended Form B 22A demonstrates that the Debtor does not have sufficient net monthly income for the presumption of abuse to arise under section 707(b)(2). The UST asserts, however, that the Form is erroneous because it includes a deduction of $471 for owning a car even though the Debtor does not have a monthly car payment.

The Debtor argues that she is entitled to the deduction under the plain language of section 707(b)(2)(A)(ii)(I), which provides in relevant part that:

> The debtor's monthly expenses shall be the debtor's <u>applicable monthly expense amounts specified</u> under the National Standards and Local Standards, and the

3

>
> debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .

Id. (emphasis added).

### A. The National and Local Standards

The National and Local Standards, to which section 707(b)(2)(A)(ii)(I) refers, are the Collection Financial Standards used by the Internal Revenue Service (the "IRS") to determine a taxpayer's ability to pay a delinquent tax liability.[2] Based primarily on data from the United States Census Bureau and the Bureau of Labor Statistics Consumer Expenditure Survey, the "National Standards" set, as objectively reasonable, amounts for five expenses: (1) food, (2) housekeeping supplies, (3) apparel and services, (4) personal care products and services, and (5) miscellaneous.[3] The National Standards are based on the taxpayer's gross income and family size.

The "Local Standards" set, as objectively reasonable, separate amounts for (1) housing and utilities, and (2)

---

[2] The Court takes judicial notice of the description of the Collection Financial Standards on the IRS website, available at http://www.irs.gov/individuals/index.html ("Collection Financial Standards" hyperlink), as well as the contents of the "Financial Analysis Handbook" located at part 5, chapter 15, section 1 of the Internal Revenue Manual ("IRM"), available at http://www.irs.gov/irm/part5/ch15s01.html.

[3] The IRS has promulgated separate "National Standards" for some items in Alaska and Hawaii, because of their unique location and higher cost of living.

4

transportation.  The former are based on the taxpayer's family size and location.  The transportation Standards include two distinct components: (1) "Ownership Costs," which are based only on the number of cars owned by the taxpayer; and (2) "Operating Costs & Public Transportation Costs," which are based on the number of cars owned by the taxpayer and on the taxpayer's location.

The Financial Analysis Handbook contains "instructions for analyzing the taxpayer's financial condition" to help IRS field agents "determine appropriate case resolution" (e.g., collect, compromise, or report as uncollectible).  IRM at 5.15.1.1 ¶¶ 1-3.  To determine what portion of the taxpayer's income should be available for repayment of delinquent taxes, the Handbook allows deductions from the taxpayer's gross income in the amounts specified in the National and Local Standards, as well as deductions for reasonable amounts of "Other Expenses" that are "necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income."  Id. at 5.15.1.7 ¶¶ 1, 2, & 5.

Under the Financial Analysis Handbook, the taxpayer is allowed the full amount of the National Standards deductions, regardless of his actual expenses.  Id. at 5.15.1.8 ¶ 2.

> The IRM makes it clear that the total applicable expense allowance of the National Standards is to be given to each taxpayer, regardless of the taxpayer's actual expenditures in any of the individual National Standards categories or the taxpayer's actual total

5

>expenditures in the combined categories.  Thus, even
>hypothetical taxpayers living in a Garden of Eden, with
>cost-free satisfaction of all their basic needs, would
>still be allowed a deduction from income in the total
>amount set out in the National Standards.

Hon. Eugene R. Wedoff, Means Testing in the New World, 79 Am. Bankr. L.J. 231, 254 (Spring 2006) (footnote omitted).

For the Local Standards, however, under the IRM "[t]he taxpayer is allowed the local standard or the amount actually paid, whichever is less."  IRM at 5.15.1.7 ¶ 4 (emphasis added).

### B.  Plain Language of the Statute

The Debtor argues that the plain language of section 707(b)(2)(A)(ii)(I) which allows the "debtor's applicable monthly expense amounts specified under the National Standards and Local Standards" permits the Debtor to take the Local Standards deduction for ownership of one car, or $471 per month.  11 U.S.C. § 707(b)(2)(A)(ii)(I).

The UST argues that, while the Debtor owns a car, she has no car payment.[4]  Therefore, the UST contends that under the plain language of the statute, she has no "applicable" monthly expense for car ownership and is not entitled to take the Local Standards deduction.  The Debtor counters that the term "applicable" simply means the number of vehicles owned by a Debtor, the Local Standards allowing different deductions depending on the number of vehicles owned.

---

[4]  The Debtor owns a car but has no car payment because she refinanced her home three years ago and repaid the car loan.

6

The UST refers to the IRM to support its interpretation that the Debtor is entitled to a deduction only if she has a car payment. The Debtor responds that the IRM is not applicable to the Bankruptcy Code. Under section 707(b)(2)(A), the Local Standards are used not as a cap, but as the actual deductions to which the Debtor is entitled. In contrast, for IRS purposes, the Local Standards are used as a cap for expenses to which the taxpayer may be entitled. Id. at 5.15.1.7 ¶ 4.

The Court agrees with the Debtor. In interpreting BAPCPA, "we begin, as always, with the language of the statute." Duncan v. Walker, 533 U.S. 167, 172 (2001). The plain language of section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the . . . Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). There is no reference in that language to the use of the Local Standards as a cap. In contrast, the IRM expressly provides that "The taxpayer is allowed the local standard or the amount actually paid, whichever is less." IRM at 5.15.1.7 ¶ 4 (emphasis added). The fact that Congress did not use language similar to the IRM evidences that it did not intend the Local Standards to apply as a cap.

Further evidence of Congress' intent is seen from the fact that in the same sentence of section 707(b)(2)(A)(ii)(I), Congress expressly stated that a debtor would be entitled to "actual monthly expenses" for Other Necessary Expenses. The use

of "actual" with respect to Other Necessary Expenses and "applicable" with respect to the National and Local Standards must mean that Congress intended two different applications. See Duncan, 533 U.S. at 173 (citation omitted) (noting that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion"); In re Demonica, 345 B.R. 895, 902 (Bankr. N.D. Ill. 2006) (concluding that "[i]n order to give effect to every word in [section 707(b)(2)(A)(ii) (I)], the term 'actual monthly expenses' cannot be interpreted to mean the same as 'applicable monthly expenses'."); In re Donald, 343 B.R. 524, 537 (Bankr. E.D.N.C. 2006) (stating that "the use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to'" (quoting In re Coleman, 426 F.3d 719, 725 (4th Cir. 2005))).

The UST does not actually argue that the Local Standards should be applied exactly as the IRM would require, i.e., as a cap. Instead the UST argues only that a debtor must have a car payment in order to use the deduction. The test articulated by the UST is not supported by the language of the statute and would create unfair results. For example, it would allow a debtor who had any car payment (even $1) to take the full Local Standards deduction of $471 but would not allow a debtor who had no car

payment to take the deduction. Because Congress did not establish the Local Standards deduction as a cap under section 707(b)(2)(A)(ii)(I), but instead made it the actual deduction, the Court concludes that the UST's interpretation is not sound. Judge Wedoff agrees:

> [A] plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less. Thus, as with the allowances of the National Standards, even if the debtor's transportation and housing needs were actually satisfied without cost to the debtor, [section] 707(b)(2)(A)(ii)(I) would allow the debtor a deduction in the amounts specified in the IRM's Local Standards. . . . The . . . IRM states that if the debtor makes no car payments, the ownership expense amount may not be claimed. Indeed this result follows necessarily from the IRM's treatment of the Local Standards as caps on actual expenditures: if a taxpayer has no car payments, the taxpayer obviously cannot claim a Local Standard amount intended to cap actual car payment expenses. However, since the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments. This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

Wedoff, Means Testing in the New World, 79 Am. Bankr. L.J. at 255-57 (footnotes omitted).

As a result, the Court concludes that based on the plain language of the statute, the Debtor is entitled to take a car

ownership deduction in the amount set forth in the Local Standards for her ownership of one car, even though she has no car payment.

    C.    <u>Legislative History</u>

Even if the statute were not clear, the legislative history supports the Debtor's interpretation of the Code. A prior version of the BAPCPA which was never passed defined "projected monthly net income" for the means test to require a calculation of expenses as follows:

> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in the area in which the debtor resides as determined under <u>the Internal Revenue Service financial analysis</u> for expenses in effect as of the date of the order for relief.

H.R. 3150, 105th Congress (1998) (emphasis added). The reference to the Internal Revenue Service financial analysis was replaced by the language currently in section 707(b)(2)(A) which simply states that a debtor gets the "applicable monthly expense amounts specified under the National and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards. <u>See, e.g.</u>, <u>Transcontinental & Western Air, Inc. v. Civil Aeronautics Bd.</u>, 336 U.S. 601, 606 (1949) (relying on legislative

history to prior unenacted bill for clarification of language used in bill that was ultimately enacted); Springfield Indus. Corp. v. United States, 11 Ct. Int'l Trade 331, 338 (1987), rev'd on other grounds, 842 F.2d 1284 (1988) (acknowledging that "[s]ilence or lack of clarity at the point where crucial language is finally inserted can sometimes be clarified by [legislative] history, even from bills which did not pass in prior years" but ultimately holding that the legislative history was not helpful to illuminate the term because the enacted bill was too different from the prior version).

    D.   Conflicting Case Law

Several courts agree, however, with the UST's argument that where a debtor has no car payment, no expense deduction should be allowed. See, e.g., In re McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006); In re Hardacre, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006). But see Demonica, 345 B.R. at 903-05 (concluding that debtor was entitled to take the Local Standards deduction for house and car even though he was not liable on the debts secured by the house and car).[5]

The Court respectfully disagrees with the decisions in McGuire and Hardacre and agrees with the decision of the Demonica

---

[5] Although all of the cases cited dealt with confirmation of a plan under chapter 13, they are instructive because for those purposes section 1325 utilizes the means test under section 707(b)(2)(A) to determine the debtor's projected disposable income.

Court. The Court in McGuire correctly noted that the Local Standards for transportation applied to vehicles owned by a debtor and stated that "[i]f a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor." 342 B.R. at 613. The McGuire Court then concluded, however, that "if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS Standards. This conforms with the IRS's application of the Standards." Id. It appears that the McGuire Court was equating "ownership" with "liability for debt." Further, the McGuire Court acknowledged that during the life of the debtor's plan, he probably would need to purchase a new car. Id. at 614. The Court stated that, if that happened, the debtor would be able to seek an adjustment of his plan payments to account for that. Id. Obviously, this Court, in determining a motion to dismiss a chapter 7 case, cannot do that.

The Court in Hardacre also relied on the IRM, not the Bankruptcy Code, to conclude that the deduction is allowable only for cars that are subject to a lease or purchase obligation. Hardacre, 338 B.R. at 728.

The Demonica Court, in discussing the housing deduction, correctly noted that "[t]he Local Standard deduction for housing categorizes the expense as mortgage/rent and specifies only one amount. Therefore, whether or not a debtor is liable on the mortgage is not relevant to determining the proper deduction for

12

the housing expense." 345 B.R. at 903. Similarly, the Demonica Court stated that with respect to the car, "[w]hile the Debtor is not obligated under the note, he does incur the expense to use the vehicle. Therefore, the Debtor can claim the Local Standard [deduction] for transportation ownership/lease expense . . . ." Id. at 905.[6]

For the reasons stated above, the Court declines to follow the decisions of the Courts in McGuire and Hardacre, and follows the decision in Demonica. Consequently, the Court concludes that section 707(b)(2)(A)(ii)(I) permits the Debtor to take the Local Standards deduction for ownership of a car even though she has no car payment.

E.   Policy Considerations

The policy behind the means test also supports the Court's decision. Congress intended that there be an easily applied formula for determining when the Court should presume that a debtor is abusing the system by filing a chapter 7 petition. Presumptions are typically created to avoid litigation. See, e.g., General Motors Acceptance Corp. v. Jones, 999 F.2d 63, 70-71 (3d Cir. 1993) (to avoid litigation expense, the Third Circuit created a rebuttable presumption that the contract rate of interest is the appropriate rate for payment of secured claim

---

[6]   Though the debtor in Demonica was not liable on the car loan, the Court noted that he was making the payment. 345 B.R. at 902.

under chapter 13 plan). By reference to the National and Local Standards, Congress intended the Court to use a chart of standard expenses for all debtors which could be easily and uniformly applied: the Court simply takes the expense amount from the applicable column based on the debtor's income, family size, number of cars and/or locale. This easy application should avoid litigation.

In addition, it is important to keep in mind that allowing the Debtor a deduction under the means test does not insulate her case from dismissal. Instead, it simply means that there is not a presumption of abuse. The UST can argue, and the Court can consider, the fact that the Debtor does not have any secured car debt to pay in determining whether the case should be dismissed under section 707(b)(3). See, e.g., In re Pennington, No. 06-10066, 2006 WL 2505942 (Bankr. D. Del. Aug. 30, 2006) (holding that, in considering whether case was an abuse under section 707(b)(3), court must consider debtor's current car payment rather than higher car payment he had at commencement of the case). See also, Wedoff, Means Testing in the New World, 79 Am. Bankr. L.J. at 257 ("Moreover, in a situation where a debtor owns a valuable car free of liens and is allowed by applicable exemption law to retain the car in Chapter 7, conversion or dismissal could still be obtained under the totality of financial circumstances standard that [section] 707(b)(3) applies in the absence of a means-test presumption.").

14

IV.    CONCLUSION

    For the foregoing reasons, the Court concludes that the Debtor may take the Local Standards deduction for ownership of a car.  As a result, the UST concedes that there is no presumption of abuse under section 707(b)(3).  The Court will reschedule a hearing to consider the evidence and argument that may be presented on the issue of whether the Debtor's chapter 7 case should nonetheless be dismissed under section 707(b)(3).

    An appropriate Order is attached.

BY THE COURT:

*Mary F. Walrath* (signature)

Dated: September 11, 2006

Mary F. Walrath
United States Bankruptcy Judge